**FILED**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

OCT 3 1 2005

MICHAEL W DOBBINS
CLERK, U.S. DISTRICT COURT

|  |  |  |
|---|---|---|
| PREMIER DESIGN + BUILD GROUP, LLC, | ) ) ) | |
| Plaintiff, | ) ) | Case No. **05C 6268** |
| vs. | ) ) | **JUDGE NORGLE** |
| EQUAL ACCESS HEALTH, INC. | ) ) | |
| Defendant. | ) | **MAGISTRATE JUDGE SCHENKIER** |

## NOTICE OF REMOVAL

Defendant EQUAL ACCESS HEALTH, INC. ("Equal Access"), pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, hereby removes this action, which had been pending as case no. 05CH15554 in the Circuit Court of Cook County, Illinois, Chancery Division (the "Action"), to the United States District Court for the Northern District of Illinois. In support of this Notice, Equal Access states as follows:

1. <u>Complaint</u>. Premier Design + Build Group, LLC ("Premier") filed this Action on or about September 13, 2005. On behalf of itself and a putative class, plaintiff asserts claims arising from the alleged transmission of facsimile advertisements in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA"), the Illinois Consumer Fraud Act ("ICFA"), 815 ILCS 505/2, and Illinois common law. (Complaint, ¶¶ 1-17).

2. <u>Basis for Jurisdiction in this Court</u>. The basis for jurisdiction in this Court is the presence of a federal question under 28 U.S.C. § 1331. See <u>Brill v. Countrywide Home Loans, Inc.</u>, 2005 U.S. App. LEXIS 22514 (7th Cir. October 20, 2005) (a copy of which is attached hereto as Exhibit 1 and incorporated herein by reference). A claim "arising under" a federal statute is within the jurisdiction of this Court. U.S. Const., Art. III, § 2. Plaintiff in this case

asserts a claim created by a federal statute, the TCPA. (Complaint, ¶¶ 23-48). This statute has been held to create grounds for removal. See Brill, 2005 U.S. App. LEXIS 22514 at 16.

3. Removal is Timely. Equal Access was served with the Class Action Complaint on September 30, 2005. Accordingly, this Notice of Removal is timely field within the thirty (30) days allotted for removal by 28 U.S.C. § 1446(b). See Fed. R. Civ. P. 6(a).

4. Pleading and Process. Under 28 U.S.C. § 1446(a), Equal Access is required to attach to this notice "a copy of all process, pleadings, and orders served upon" them. Accordingly, a true and accurate copy of the Complaint and Summons is attached hereto as Exhibit 2 and incorporated herein by reference.

Dated: October 31, 2005

Respectfully submitted,

By _____

Frederic R. Klein (ARDC # 03127304)
Jon E. Klinghoffer (ARDC # 06270082)
GOLDBERG, KOHN, BELL, BLACK, ROSENBLOOM & MORITZ, LTD.
55 East Monroe Street, Suite 3700
Chicago, Illinois 60603
(312) 201-4000 (telephone)
(312) 332-2196 (facsimile)

Mary Ann L. Wymore (to be admitted *Pro Hac Vice*)
Ryan J. Gavin (to be admitted *Pro Hac Vice*)
J. Andrew Walkup (to be admitted *Pro Hac Vice*)
GREENSFELDER, HEMKER & GALE, P.C.
10 South Broadway, Suite 2000
St. Louis, Missouri 63102
(314) 241-9090 (telephone)
(314) 345-5466 (facsimile)

*Attorneys for Equal Access Health, Inc.*

**Exhibit 1**

LEXSEE 2005 U.S. APP. LEXIS 22514

**JAMES BRILL, Plaintiff-Respondent, v. COUNTRYWIDE HOME LOANS, INC., Defendant-Petitioner.**

No. 05-8024

**UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT**

**2005 U.S. App. LEXIS 22514**

**October 7, 2005, Submitted**
**October 20, 2005, Decided**

**PRIOR HISTORY:** [*1] Petition for Leave to Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 05 C 2713. John W. Darrah, Judge. Brill v. Countrywide Home Loans, Inc., 2005 U.S. Dist. LEXIS 19664 (N.D. Ill., Sept. 8, 2005)

**LexisNexis(R) Headnotes**

**JUDGES:** Before POSNER, EASTERBROOK, and ROVNER, Circuit Judges.

**OPINIONBY:** For COUNTRYWIDE HOME LOANS, INCORPORATED, Petitioner: Howard L. Teplinsky, OTTENHEIMER, TEPLINSKY, ROSENBLOOM, Buffalo Grove, IL USA.

For JAMES BRILL, Respondent: Daniel A. Edelman, EDELMAN, COMBS & LATTURNER, Chicago, IL USA.

EASTERBROOK

**OPINION:**

EASTERBROOK, *Circuit Judge*. Countrywide Home Loans violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, by sending fax advertisements. James Brill, one of the recipients, filed suit in state court, seeking to represent a class of recipients. Countrywide filed a notice of removal under the Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4 (2005). Brill's suit was commenced after February 18, 2005, the Act's effective date. The class comprises more than 100 members, minimal diversity of citizenship is present, and Countrywide alleged in the notice of removal that the amount in controversy exceeds $ 5 million, the statutory threshold. Countrywide concedes that it sent [*2] at least 3,800 unsolicited advertising faxes, and § 227(b)(3) provides that the court may award $ 500 per fax, a sum that may be trebled if "the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection". The award thus could reach $ 5.7 million. If Brill can show that Countrywide sent more than the 3,800 junk faxes, it could be higher still. Yet the district judge remanded the case, ruling not only that Countrywide had not carried its burden of showing that the stakes exceed $ 5 million (Brill might be unable to prove wilfulness) but also that suits under the Telephone Consumer Protection Act *never* may be removed, because state jurisdiction is exclusive. 2005 U.S. Dist. LEXIS 19664 (N.D. Ill. Sept. 8, 2005). Countrywide has filed a petition for interlocutory review under 28 U.S.C. § 1453(c)(1) (as amended by the Class Action Fairness Act). We grant this petition, accept the appeal, and summarily reverse.

The district court began by allocating to Countrywide, as the proponent of federal jurisdiction, the burden of persuasion on the amount in controversy. That the proponent of jurisdiction [*3] bears the risk of non-persuasion is well established. See, e.g., *In re Brand Name Prescription Drugs Antitrust Litigation*, 123 F.3d 599, 607 (7th Cir. 1997); *Smith v. American General Life & Accident Insurance Co.*, 337 F.3d 888, 892 (7th Cir. 2003). Whichever side chooses federal court must establish jurisdiction; it is not enough to file a pleading and leave it to the court or the adverse party to negate jurisdiction. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992). And the rule makes practical sense. If the burden rested with the proponent of remand, then Countrywide could have removed without making any effort to calculate its maximum exposure, and without conceding that it had faxed thousands of ads. That would have thrown on Brill the burden of showing that Countrywide could not possibly have sent more than 3,333 junk faxes (for if the award can reach $ 1,500 per fax then it is No. 3,334 that puts the stakes over $ 5 million). Brill would have no way to show this early in the litigation, and plaintiffs in other kinds of suits would encounter similar difficulty. When the defendant has vital knowledge [*4] that the plaintiff may lack, a burden that induces the removing party to come forward with the information -- so that the choice between state and federal court may be made accurately -- is much to be desired.

Countrywide maintains that the Class Action Fairness Act reassigns that burden to the proponent of remand. It does not rely on any of the Act's language, for none is even arguably relevant. Instead it points to this language in the report of the Senate Judiciary Committee: "If a purported class action is removed pursuant to these jurisdictional provisions, the named plaintiff(s) should bear the burden of demonstrating that the removal was improvident (i.e., that the applicable jurisdictional provisions are not satisfied)." S. Rep. 14, 109th Cong. 1st Sess. 42 (2005). This passage does not concern any text in the bill that eventually became law. When a law sensibly could be read in multiple ways, legislative history may help a court understand which of these received the political branches' imprimatur. But when the legislative history stands by itself, as a naked expression of "intent" unconnected to any enacted text, it has no more force than an opinion poll of legislators -- [*5] less, really, as it speaks for fewer. Thirteen Senators signed this report and five voted not to send the proposal to the floor. Another 82 Senators did not express themselves on the question; likewise 435 Members of the House and one President kept their silence.

We recognize that a dozen or so district judges have treated this passage as equivalent to a statute and reassigned the risk of non-persuasion accordingly. See, e.g., *Berry v. American Express Publishing Corp.*, 381 F. Supp. 2d 1118 (C.D. Cal. 2005); *Natale v. Pfizer, Inc.*, 379 F. Supp. 2d 161 (D. Mass.), affirmed on other grounds, 2005 U.S. App. LEXIS 19912 (1st Cir. Sept. 16, 2005). But naked legislative history has no legal effect, as the Supreme Court held in *Pierce v. Underwood*, 487 U.S. 552, 566-68, 101 L. Ed. 2d 490, 108 S. Ct. 2541 (1988). A Committee of Congress attempted to alter an established legal rule by a forceful declaration in a report; the Justices concluded, however, that because the declaration did not correspond to any new statutory language that would change the rule, it was ineffectual. Just so here. The rule that the proponent of federal jurisdiction bears [*6] the risk of non-persuasion has been around for a long time. To change such a rule, Congress must enact a statute with the President's signature (or by a two-thirds majority to override a veto). A declaration by 13 Senators will not serve. Cf. *Cherokee Nation of Oklahoma v. Leavitt*, 161 L. Ed. 2d 66, 125 S. Ct. 1172, 1181-82 (2005); *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 162 L. Ed. 2d 502, 125 S. Ct. 2611, 2625-27 (2005).

There remains the question what Countrywide must do to discharge its burden. The district judge thought that a removing litigant must produce "evidence . . . that a favorable judgment will award Plaintiff" more than the jurisdictional minimum. The judge restated this as a need for "competent proof to establish" that the statutory threshold has been exceeded. Yet suits are removed on the pleadings, long before "evidence" or "proof" have been adduced. The question is not what damages the plaintiff will recover, but what amount is "in controversy" between the parties. That the plaintiff may fail in its proof, and the judgment be less than the threshold (indeed, a good chance that the plaintiff will fail and the judgment will [*7] be zero) does not prevent removal. Once the proponent of jurisdiction has set out the amount in controversy, only a "legal certainty" that the judgment will be less forecloses federal jurisdiction. See *St. Paul Mercury Indemnity Co.*

*v. Red Cab Co.*, 303 U.S. 283, 82 L. Ed. 845, 58 S. Ct. 586 (1938); *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955 (7th Cir. 1998). This standard applies to removed cases no less than to those filed initially in federal court. See *Normand v. Orkin Exterminating Co.*, 193 F.3d 908 (7th Cir. 1999); cf. *The Barbers, Hairstyling for Men & Women, Inc. v. Bishop*, 132 F.3d 1203 (7th Cir. 1997).

Application of the *St. Paul Mercury* "legal certainty" standard usually is straightforward when the plaintiff wants to be in federal court. Then the complaint will contain allegations that, if established at trial, would justify a judgment exceeding the jurisdictional minimum. When the plaintiff prefers to be in state court, however, the complaint may be silent or ambiguous on one or more of the ingredients needed to calculate the amount in controversy. A defendant's notice of removal then serves the same function [*8] as the complaint would in a suit filed in federal court. The complication is that a removing defendant can't make the plaintiff's claim for him; as master of the case, the plaintiff may limit his claims (either substantive or financial) to keep the amount in controversy below the threshold. Thus part of the removing party's burden is to show not only what the stakes of the litigation *could be*, but also what they *are* given the plaintiff's actual demands. That's the point of statements in our decisions that the removing litigant must show a reasonable probability that the stakes exceed the minimum. See, e.g., *Smith v. American General Life & Accident Insurance Co.*, 337 F.3d 888, 892 (7th Cir. 2003); *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997). The demonstration concerns what the plaintiff is claiming (and thus the amount in controversy between the parties), not whether plaintiff is likely to win or be awarded everything he seeks.

Countrywide did all that is necessary by admitting that one of its employees sent at least 3,800 unsolicited fax ads. From this and the statutory text one can determine that the controversy [*9] exceeds $ 5 million. The complaint did not set a cap on recovery -- as it might have done if the plaintiff had represented that the class would neither seek nor accept more than $ 5 million in aggregate. Nor did the complaint abjure trebled damages; it held open that possibility, depending on the state of the proof. (The complaint reads: "If the evidence shows that the violation was willful, plaintiff requests trebling of the damages.") Countrywide did not have to confess liability in order to show that the controversy exceeds the threshold. A judge may well award less than $ 1,500 per fax, but a recovery exceeding $ 5 million for the class as a whole is not "legally impossible."

That the controversy exceeds $ 5 million is insufficient, however, if state courts have exclusive jurisdiction to resolve suits under the Telephone Consumer Protection Act. The district judge relied on § 227(b)(3), which provides:

A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State --

(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation, [*10]

(B) an action to recover for actual monetary loss from such a violation, or to receive $ 500 in damages for each such violation, whichever is greater, or

(C) both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

This is the only portion of § 227 that expressly creates a private right of action, and from its failure to authorize litigation in federal court the district judge inferred that state jurisdiction must be exclusive. Six courts of appeals have come to similar conclusions -- though they deal only with the question whether suit to enforce the Telephone Consumer Protection Act may be filed or removed under the federal-question jurisdiction, see 28 U.S.C. § 1331, and not whether such a suit may be removed under the diversity jurisdiction. See *Foxhall Realty Law Offices, Inc. v. Telecommunications Premium Services, Ltd.*, 156 F.3d 432 (2d Cir. 1998); [*11] *ErieNet, Inc. v. Velocity Net, Inc.*, 156 F.3d 513 (3d Cir. 1998); *International Science & Technology Institute, Inc. v. Inacom Communications, Inc.*, 106 F.3d 1146 (4th Cir. 1997); *Chair King, Inc. v. Houston Cellular Corp.*, 131 F.3d 507 (5th Cir. 1997); *Murphey v. Lanier*, 204 F.3d 911 (9th Cir. 2000); *Nicholson v. Hooters of Augusta, Inc.*, 136 F.3d 1287 (11th Cir. 1998). But if state jurisdiction really is "exclusive," then it knocks out § 1332 as well as § 1331.

These decisions can not be reconciled with either *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 162 L. Ed. 2d 257, 125 S. Ct. 2363 (2005), or *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 155 L. Ed. 2d 923, 123 S. Ct. 1882 (2003), both of which came after all of the six decisions to which we have referred. *Grable* resolved a conflict in the Supreme Court's own decisions by holding that federal jurisdiction does not depend on the existence of a private right of action under federal law. And *Breuer* held that statutory permission to litigate a federal claim in state court does not [*12] foreclose removal under the federal-question jurisdiction.

The Fair Labor Standards Act provides that a plaintiff may "maintain" an action in either state or federal court, and Breuer insisted that a right to "maintain" an action in state court forecloses its removal. The Justices concluded, however, that a plaintiff's right to litigate in state court does not block a defendant from electing a federal forum, because 28 U.S.C. § 1441(a), the general removal provision, allows the defendant to remove any claim under federal law (or supported by diversity of citizenship) "except as otherwise expressly provided by Act of Congress". The word "maintain" in the FLSA is not an "express" prohibition on removal, *Breuer* held.

One may say exactly the same about the right to sue in state court under § 227(b)(3). It does not mention removal or the general federal-question jurisdiction. It does not declare state jurisdiction to be exclusive. Thus it does not expressly override a defendant's removal rights under both § 1441 (because a claim that a business violated the Telephone Consumer Protection Act arises under federal law) and the Class Action Fairness Act. Section 1445 [*13] has a list of non-removable actions that satisfy the "express prohibition" required by § 1441(a), and the Telephone Consumer Protection Act is not on that list. *Breuer* collects other express bars but does not include the Telephone Consumer Protection Act among them. 538 U.S. at 696-97. The Class Action Fairness Act has its own list of claims to which its removal provisions are inapplicable, see 28 U.S.C. § 1453(d) (added by § 5(a) of the new Act), and the Telephone Consumer Protection Act is not on that list either.

Other circuits, writing before *Breuer*, wondered what function § 227(b)(3) serves if it does not make state jurisdiction exclusive. Had Congress never penned those words, plaintiffs could have used state forums to the extent they were generally open to civil litigation. See *Testa v. Katt*, 330 U.S. 386, 91 L. Ed. 967, 67 S. Ct. 810 (1947). That's true enough, but restating an established norm can be beneficial, if only because it avoids any argument that for this law *federal* jurisdiction is exclusive. Such contentions are frequent and may entail decades of litigation across the thirteen circuits. See, e.g., *Yellow Freight System, Inc. v. Donnelly*, 494 U.S. 820, 108 L. Ed. 2d 834, 110 S. Ct. 1566 (1990) [*14] (holding, after 26 years of litigation, that claims under the Civil Rights Act of 1964 may be resolved in state as well as federal courts); *Tafflin v. Levitt*, 493 U.S. 455, 107 L. Ed. 2d 887, 110 S. Ct. 792 (1990) (holding, after 20 years of litigation, that claims under RICO may be resolved in state as well as federal courts). Section 227(b)(3) may serve the further function of freeing states from *Testa*'s rule that they may not discriminate against federal claims; the clause in §

227(b)(3) that the action is proper "if otherwise permitted by the laws or rules of court of a State" implies that each state may decide for itself whether to entertain claims under the Telephone Consumer Protection Act.

Section 227(b)(3) does not say that state jurisdiction is "exclusive" -- but another part of § 227 does use that word. Section 227(f)(1) permits the states themselves to bring actions based on a pattern or practice of violations. Section 227(f)(2) continues: "The district courts of the United States, the United States courts of any territory, and the District Court of the United States for the District of Columbia shall have exclusive jurisdiction over all civil actions brought under [*15] this subsection." How strange it would be to make federal courts the exclusive forum for suits by the states, while making state courts the exclusive forum for suits by private plaintiffs. But then § 227(f)(2) is explicit about exclusivity, while § 227(b)(3) is not; the natural inference is that the state forum mentioned in § 227(b)(3) is optional rather than mandatory. Likewise the proviso that actions may be filed in state court "if otherwise permitted by the laws or rules of court of a State" implies that federal jurisdiction under § 1331 or § 1332 is available; otherwise where would victims go if a state elected not to entertain these suits? Our point is not that the reference to exclusive jurisdiction in § 227(f)(2) shows that "Congress knows how" to limit litigation to one set of courts -- references to the subjective knowledge of a body with two chambers and 535 members, and thus without a mind, rarely facilitate interpretation -- but that differences in language within a single enactment imply differences in meaning as an objective matter. See Akhil Reed Amar, *Intratextualism*, 112 Harv. L. Rev. 747 (1999). The contrast between § 227(f)(2) and § 227(b)(3) [*16] is baffling unless one provides exclusivity and the other doesn't.

This means that removal is authorized not only by the Class Action Fairness Act but also by § 1441, because the claim arises under federal law. Because § 1453(c)(1) permits appellate review of remand orders "notwithstanding section 1447(d)", we are free to consider any potential error in the district court's decision, not just a mistake in application of the Class Action Fairness Act. When a statute authorizes interlocutory appellate review, it is the district court's entire decision that comes before the court for review. *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 205, 133 L. Ed. 2d 578, 116 S. Ct. 619 (1996). Thus § 1447(d), which would preclude appellate review of a remand based wholly on a conclusion that state jurisdiction is exclusive, does not apply when we are authorized to hear an appeal on some other ground -- and this appeal is proper because the district judge rejected Countrywide's argument that the Class Action Fairness Act allows removal.

The judgment of the district court is [*17] reversed, and the case is remanded with instructions to decide the suit on the merits.

**Exhibit 2**

**RECD SEP 3 0 2005**

DAVID HARRIS

| | | |
|---|---|---|
| 2120 - Served | 2121 - Served | |
| 2220 - Not Served | 3221 - Not Served | |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| **SUMMONS** | **ALIAS - SUMMONS** | CCG N001-10M-1-07-05 ( |

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

05 SEP 21 P3 54

DATE SERVED 9/30/05
TIME SERVED 10:40am

(Name all parties)

PREMIER DESIGN + BUILD GROUP, LLC

v.

EQUAL ACCESS HEALTH, INC.

No. 05 CH **05CH15554**

Sheriff, please serve Defendant:

Mr. Chris Noviager, President
Equal Access Health
Six Flags Drive
P. O. Box 5886
Arlington, TX 76005

**SUMMONS**

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room _____, Chicago, Illinois 60602

☐ District 2 - Skokie
5600 Old Orchard Rd.
Skokie, IL 60077

☐ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

☐ District 4 - Maywood
1500 Maybrook Ave.
Maywood, IL 60153

☐ District 5 - Bridgeview
10220 S. 76th Ave.
Bridgeview, IL 60455

☐ District 6 - Markham
16501 S. Kedzie Pkwy.
Markham, IL 60446

☐ Child Support
28 North Clark St., Room 240
Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

WITNESS, _____ SEP 13 2005

DOROTHY BROWN

Clerk of Court

Atty. No.: 41503

Name: Penland & Hartwell, LLC

Atty. for: Plaintiff

Address: One N. LaSalle Street, Suite 1515

City/State/Zip: Chicago, Illinois 60602

Telephone: 312-578-5610

Date of Service: _____
(To be inserted by officer on copy left with defendant or other person)

Service by Facsimile Transmission will be accepted at: _____
(Area Code) (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, CHANCERY DIVISION

PREMIER DESIGN + BUILD GROUP, LLC, an Illinois
Limited liability company,

        Plaintiff,

    v.

EQUAL ACCESS HEALTH, INC.,

        Defendant.



No. 05CH15554

## COMPLAINT - CLASS ACTION

NOW COMES the Plaintiff, Premier Design + Build Group, LLC ("PLAINTIFF") by and through its attorneys, Penland & Hartwell, LLC, and as for its complaint against the Defendant, Equal Access Health, Inc., ("DEFENDANT"), and states as follows:

### INTRODUCTION

1.      PLAINTIFF brings this action to secure redress for the actions of DEFENDANT in sending out unsolicited advertisements to telephone facsimile machines in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, the Illinois Consumer Fraud Act ("ICFA"), 815 ILCS 505/2, and Illinois common law.

### PARTIES

2.      PLAINTIFF is an Illinois limited liability company with its primary place of business located in Des Plaines, Illinois, where it maintains an office and telephone facsimile equipment.

3.      On information and belief, DEFENDANT is a Nevada corporation with it primary place of business located in Arlington, Texas.

1

4.    On information and belief, DEFENDANT does business in Illinois under numerous

assumed names, including but not limited to, Health Benefits of America.

## JURISDICTION

5.    As set forth herein, DEFENDANT has transacted and is transacting business in the

State of Illinois, and therefore submits itself to this jurisdiction pursuant to Section 5/2-209(a) of

the Illinois Code of Civil Procedure. 735 ILCS 5/2-209(a) (West 2005).

6.    This action arise under the Telephone Consumer Protection Act ("TCPA"), 47

U.S.C. § 227.

7.    This Court has jurisdiction over this matter pursuant to 47 U.S.C. § 227(b)(3).

8.    The claims in this matter arose substantially in this Judicial District.

## FACTS

9.    DEFENDANT engaged in acts or practices which violated the federal TCPA and the

ICFA, to the detriment of the PLAINTIFF, as herein described in this Complaint.

10.    On or about April 26, 2005, PLAINTIFF received five unsolicited fax

advertisements, at various times during that day, from DEFENDANT. True and accurate copies of

the fax advertisement is attached hereto and incorporated herein as **Group Exhibit A**.

11.    On or about April 28, 2005, PLAINTIFF received the unsolicited fax advertisement

from DEFENDANT. A true and accurate copy of the fax advertisement is attached hereto and

incorporated herein as **Group Exhibit A**.

12.    On or about May 2, 2005, PLAINTIFF received the unsolicited fax advertisement

from DEFENDANT. A true and accurate copy of the fax advertisement is attached hereto and

incorporated herein as **Group Exhibit A**.

13.     On or about May 4, 2005, PLAINTIFF received the unsolicited fax advertisement from DEFENDANT. A true and accurate copy of the fax advertisement is attached hereto and incorporated herein as **Group Exhibit A.**

14.     On or about May 8, 2005, PLAINTIFF received the unsolicited fax advertisement from DEFENDANT. A true and accurate copy of the fax advertisement is attached hereto and incorporated herein as **Group Exhibit A.**

15.     On or about May 10, 2005, PLAINTIFF received the unsolicited fax advertisement from DEFENDANT. A true and accurate copy of the fax advertisement is attached hereto and incorporated herein as **Group Exhibit A.**

16.     On or about June 13, 2005, PLAINTIFF received the unsolicited fax advertisement from DEFENDANT. A true and accurate copy of the fax advertisement is attached hereto and incorporated herein as **Group Exhibit A.**

17.     PLAINTIFF had no prior relationship with DEFENDANT and had not authorized the sending of fax advertisements to PLAINTIFF.

18.     DEFENDANT *did not* obtain "prior express invitation or permission" before sending its fax advertisement.

19.     On information and belief, the fax was sent as part of a mass "broadcasting" of faxes.

20.     DEFENDANT, and/or its agents designed the advertising material in question in a manner calculated to make its receipt particularly expensive. The inclusion of graphics, bold headlines, and words in the fax causes it to consume unusually large amounts of toner or ink. Heavy black headlines and graphics cause a fax to consume as much toner or ink as a dozen or more ordinary business letters.

3

21.    DEFENDANT, and/or its agents failed to incorporate one or more of the following requirements into the unsolicited fax advertisement in violation of TCPA, 47 U.S.C. § 227(d)(1)(B)

        a.     Identity of the sender

        b.     Date and time of the transmission

        c.     Telephone number of the sender

        d.     Address of sender's place of business

22.    An "unsolicited advertisement" is defined by 47 U.S.C. § 227(a)(4) to mean "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person with out that person's prior express invitation or permission."

## COUNT I: VIOLATION OF TCPA-(UNSOLICITED FAX)

23.    PLAINTIFF hereby restates, realleges and incorporates by reference paragraphs 1-22, inclusive, as though fully set forth at length as Paragraph 23 of Count I of this Complaint.

24.    The TCPA makes unlawful the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine..." 47 U.S.C. § 227(b)(1)(C)

25.    DEFENDANT'S transmission of unsolicited fax advertisements constitutes an *unlawful taking* of PLAINTIFF'S fax paper, toner ink and electricity, as well as an *unauthorized use* of PLAINTIFFS' fax machines.

26.    The TCPA, 47 U.S.C. § 227(b)(3), provides:

4

Private Right of Action.

A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State-

(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

(C) both such actions.

If the Court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the subparagraph (B) of this paragraph.

27. The term "willful", when used with reference to the commission or omission of any act, means the conscious and deliberate commission or commission of such act, irrespective of any intent to violate any provision of the act. 47 U.S.C. § 312(f)(1).

28. DEFENDANT, by sending the aforementioned facsimile transmission to Plaintiff, acted voluntarily and under its own free will, and thus *willfully* sent, or caused to be sent, unsolicited advertisements by fax.

29. The DEFENDANT *knew* that it was sending, or causing to be sent, unsolicited advertisements by fax.

30. DEFENDANT is therefore liable for the sum of $1,500 in damages, for its unsolicited fax advertisement, pursuant to 47 U.S.C. § 227(b)(3)(C).

31. DEFENDANT should be enjoined from committing similar violations in the future.

5

## CLASS ALLEGATIONS

32.    PLAINTIFF brings this claim on behalf of a class, consisting of (a) all persons (b) who, on or after a date four years prior to the filing of this action (28 U.S.C. § 1658), (c) were sent advertising faxes by DEFENDANT cannot provide evidence of express consent.

33.    The class is so numerous that joinder of all members is impractical.  PLAINTIFF allege on information and belief that there are more than 50 members of the class.

34.    There are questions of law and fact common to the class that predominates over any questions affecting only individual class members. Predominate common questions include:

        a.    Whether DEFENDANT engaged in a pattern of sending unsolicited fax advertisements;

        b.    The manner in which DEFENDANT compiled or obtained their list of fax numbers;

        c.    Whether DEFENDANT thereby violated the TCPA;

        d.    Whether DEFENDANT thereby committed the tort of conversion;

        e.    Whether DEFENDANT thereby engaged in unfair and deceptive acts and practices, in violation of the ICFA;

        f.    Whether DEFENDANT thereby tortiously damaged the property of PLAINTIFF.

35.    PLAINTIFF will fairly and adequately protect the interests of the class.  PLAINTIFF has retained counsel experienced in handling class actions and claims involving unlawful business practices.  Neither PLAINTIFF nor PLAINTIFF'S counsel have any interests which might cause them not to vigorously pursue this action.

36.    A class action is an appropriate method for the fair and efficient adjudication of this controversy.  The interest of class members in individually controlling the prosecution of

6

separate claims against defendant is small because it is not economically feasible to bring individual actions.

37. Several courts have certified class actions under the TCPA. Nicholson v. Hooters of Augusta, Inc. 245 Ga. App. 363, 537 S.E. 2d 468 (2000); ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc., 50 P.3d 844 (Ariz. App. 2002) (private class actions); see State of Texas v. American Blast Fax, Inc., 164 F. Supp.2d 892 (W.D.Tex.2001) (state enforcement action).

38. Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g., for securities fraud.

WHEREFORE, Plaintiff, Premier Design + Build Group, LLC and the class, pray for a judgment, in its favor and against Defendant, Equal Access Health, Inc., for:

  a. Actual damages;

  b. Statutory damages;

  c. An injunction against the further transmission of unsolicited fax advertising;

  d. Costs and Attorney's fees;

  e. Such other or further relief as the Court deems just and proper.

### COUNT II: VIOLATION OF TCPA-(FAILURE TO IDENTIFY)

39. PLAINTIFF hereby restates, realleges and incorporates by reference paragraphs 1-22, inclusive, as though fully set forth at length as Paragraph 39 of Count II of this Complaint.

40. DEFENDANT, and/or its agents failed to incorporate one or more of the following requirements into the unsolicited fax advertisement in violation of TCPA, 47 U.S.C. § 227(d)(1)(B)

  a. Identity of the sender

    b.    Date and time of the transmission

    c.    Telephone number of the sender

    d.    Address of sender's place of business

41.    Each of DEFENDANT's telephone facsimile transmissions violates 47 U.S.C.§ 227(d)(1)(B) of the TCPA.

## CLASS ALLEGATIONS

42.    PLAINTIFF brings this claim on behalf of a class, consisting of (a) all persons (b) who, on or after a date four years prior to the filing of this action (28 U.S.C. § 1658), (c) were sent advertising faxes by DEFENDANT cannot provide evidence of express consent.

43.    The class is so numerous that joinder of all members is impractical. PLAINTIFF allege on information and belief that there are more than 50 members of the class.

44.    There are questions of law and fact common to the class that predominates over any questions affecting only individual class members. Predominate common questions include:

    a.    Whether DEFENDANT engaged in a pattern of sending unsolicited fax advertisements;

    b.    The manner in which DEFENDANT compiled or obtained their list of fax numbers;

    c.    Whether DEFENDANT thereby violated the TCPA;

    d.    Whether DEFENDANT thereby committed the tort of conversion;

    e.    Whether DEFENDANT thereby engaged in unfair and deceptive acts and practices, in violation of the ICFA;

    f.    Whether DEFENDANT thereby tortiously damaged the property of PLAINTIFF.

45.    PLAINTIFF will fairly and adequately protect the interests of the class. PLAINTIFF has retained counsel experienced in handling class actions and claims involving unlawful

8

business practices. Neither PLAINTIFF nor PLAINTIFF's counsel have any interests which might cause them not to vigorously pursue this action.

46.     A class action is an appropriate method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against defendant is small because it is not economically feasible to bring individual actions.

47.     Several courts have certified class actions under the TCPA. Nicholson v. Hooters of Augusta, Inc., 245 Ga. App. 363, 537 S.E. 2d 468 (2000); ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc., 50 P.3d 844 (Ariz. App. 2002) (private class actions); see State of Texas v. American Blast Fax, Inc., 164 F. Supp.2d 892 (W.D.Tex.2001) (state enforcement action).

48.     Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g., for securities fraud.

WHEREFORE, Plaintiff, Premier Design + Build Group, LLC and the class, pray for a judgment, in its favor and against Defendant, Equal Access Health, Inc., for:

a.      Actual damages;

b.      Statutory damages;

c.      An injunction against the further transmission of unsolicited fax advertising;

d.      Costs and Attorney's fees;

e.      Such other or further relief as the Court deems just and proper.

## COUNT III: CONVERSION

49.     PLAINTIFF hereby restates, realleges and incorporates by reference paragraphs 1-22, inclusive, as though fully set forth at length as Paragraph 49 of Count III of this Complaint.

50. By sending PLAINTIFF unsolicited faxes, DEFENDANT converted to their own use, the PLAINTIFF'S ink or toner and paper and use of it facsimile machine.

51. Immediately prior to sending of the unsolicited faxes, PLAINTIFF owned and had an unqualified and immediate right to the possession of the paper and ink or toner used to print the faxes and the use of its machine.

52. By sending the unsolicited faxes, DEFENDANT appropriated to their own use, the PLAINTIFF'S paper and ink or toner used to print the faxes and used the paper and ink or toner in such a manner as to make them unusable. Such appropriation was wrongful and without PLAINTIFF'S authorization.

53. DEFENDANT knew or should have known that such appropriation of the paper and ink or toner was wrongful and without authorization.

54. The Criminal Code, 720 ILCS 5/26-3, makes it an offense to send an unsolicited fax advertisement.

55. PLAINTIFF was deprived of the paper and ink or toner, which could no longer be used for any other purpose. PLAINTIFF thereby suffered damages as a result of receipt of unsolicited faxes.

56. DEFENDANT should be enjoined from committing similar violations in the future.

## CLASS ALLEGATIONS

57. PLAINTIFF brings this claim on behalf of a class, consisting of (a) all persons (b) who, on or after a date 5 years prior to the filing of this action, (c) were sent advertising faxes by defendant, Equal Access Health, Inc., (d) and with respect to whom defendant cannot provide evidence of express consent.

10

58.     The class is so numerous that joinder of all members is impractical. PLAINTIFF alleges on information and belief that there are more than 50 members of the class.

59.     There are questions of law and fact common to the class that predominates over any questions affecting only individual class members. Predominate common questions include:

a.   Whether DEFENDANT engaged in a pattern of sending unsolicited fax advertisements;

b.   The manner in which DEFENDANT compiled or obtained their list of fax numbers;

c.   Whether DEFENDANT thereby violated the TCPA;

d.   Whether DEFENDANT thereby committed the tort of conversion;

e.   Whether DEFENDANT thereby engaged in unfair and deceptive acts and practices, in violation of the ICFA;

f.   Whether DEFENDANT thereby tortiously damaged the property of PLAINTIFF.

60.   PLAINTIFF will fairly and adequately protect the interests of the class. PLAINTIFF has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither PLAINTIFF nor PLAINTIFF'S counsel have any interests which might cause them not to vigorously pursue this action.

61.   A class action is an appropriate method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against defendant is small because it is not economically feasible to bring individual actions.

11

62. Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g., for securities fraud.

WHEREFORE, Plaintiff, Premier Design + Build Group, LLC and the class, pray for a judgment, in its favor and against Defendant, Equal Access Health, Inc., for:

a. Actual damages;

b. Statutory damages;

c. An injunction against the further transmission of unsolicited fax advertising;

d. Costs and Attorney's fees;

e. Such other or further relief as the Court deems just and proper.

## COUNT IV-VIOLATION OF ICFA

63. PLAINTIFF hereby restates, realleges and incorporates by reference paragraphs 1-22, inclusive, as though fully set forth at length as Paragraph 63 of Count IV of this Complaint.

64. DEFENDANT engaged in unfair and deceptive acts and practices, in violation of ICFA § 2, 815 ILCS 505/2, by sending unsolicited fax advertising to PLAINTIFF and others.

65. PLAINTIFF suffered damages as a result of receipt of the unsolicited faxes, in the form of paper and ink or toner consumed as a result.

66. DEFENDANT engaged in such conduct in the course of trade and commerce.

67. DEFENDANT'S acts or practices of sending unsolicited commercial fax advertisements is an *inherently unfair and deceptive* solicitation since the solicitation is made through the *unlawful taking* of plaintiff's fax paper, toner or ink, and electricity, as well as an *unauthorized use* of plaintiff's fax machine.

68.     DEFENDANT'S shifting of advertising costs to PLAINTIFF through unsolicited faxes makes such practice unfair. In addition, the DEFENDANT'S conduct was contrary to public policy, as established by the TCPA and the Illinois statutory and common law.

69.     The Criminal Code, 720 ILCS 5/26-3, makes it an offense to send an unsolicited fax advertisement.

70.     DEFENDANT should be enjoined from committing similar violations in the future.

## CLASS ALLEGATION

71.     PLAINTIFF brings this claim on behalf of a class, consisting of (a) all persons (b) who, on or after a date 5 years prior to the filing of this action, (c) were sent advertising faxes by defendant, Equal Access Health, Inc., (d) and with respect to whom defendant cannot provide evidence of express consent.

72.     The class is so numerous that joinder of all members is impractical. PLAINTIFF alleges on information and belief that there are more than 50 members of the class.

73.     There are questions of law and fact common to the class that predominates over any questions affecting only individual class members. Predominate common questions include:

> a. Whether DEFENDANT engaged in a pattern of sending unsolicited fax advertisements;
>
> b. The manner in which DEFENDANT compiled or obtained their list of fax numbers;
>
> c. Whether DEFENDANT thereby violated the TCPA;
>
> d. Whether DEFENDANT thereby committed the tort of conversion;
>
> e. Whether DEFENDANT thereby engaged in unfair and deceptive acts and practices, in violation of the ICFA;

13

f. Whether DEFENDANT thereby tortiously damaged the property of

Plaintiff.

74. PLAINTIFF will fairly and adequately protect the interests of the class. PLAINTIFF has retained counsel experienced in handling class actions and claims involving unlawful business.

75. A class action is an appropriate method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against defendant is small because it is not economically feasible to bring individual actions.

76. Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g., for securities fraud.

WHEREFORE, Plaintiff, Premier Design + Build Group, LLC and the class, pray for a judgment, in its favor and against Defendant, Equal Access Health, Inc., for:

 a.   Actual damages;

 b.   Statutory damages;

 c.   An injunction against the further transmission of unsolicited fax advertising;

 d.   Costs and Attorney's fees;

 e.   Such other or further relief as the Court deems just and proper.

## COUNT V: TRESPASS

77. PLAINTIFF hereby restates, realloges and incorporates by reference paragraphs 1-22, inclusive, as though fully set forth at length as Paragraph 77 of Count V of this Complaint.

78. By sending PLAINTIFF unsolicited faxes, DEFENDANT damaged paper and ink belonging to PLAINTIFF.

14

79. Such action was wrongful and without authorization, and amounts to a trespass.

80. DEFENDANT knew or should have known that their action was wrongful and without the PLAINTIFF'S authorization.

81. The Criminal Code, 720 ILCS 5/26-3, makes it an offense to send an unsolicited fax advertisement.

82. PLAINTIFF thereby suffered damages as a result of receipt of the unsolicited faxes.

83. DEFENDANT should be enjoined from committing similar violations in the future.

## CLASS ALLEGATIONS

84. PLAINTIFF brings this claim on behalf of a class, consisting of (a) all persons (b) who, on or after a date 5 years prior to the filing of this action, (c) were sent advertising faxes by defendant, Equal Access Health, Inc., (d) and with respect to whom defendant cannot provide evidence of express consent.

85. The class is so numerous that joinder of all members is impractical. PLAINTIFF alleges on information and belief that there are more than 50 members of the class.

86. There are questions of law and fact common to the class that predominates over any questions affecting only individual class members. Predominate common questions include:

   a. Whether DEFENDANT engaged in a pattern of sending unsolicited fax advertisements;

   b. The manner in which DEFENDANT compiled or obtained their list of fax numbers;

   c. Whether DEFENDANT thereby violated the TCPA;

   d. Whether DEFENDANT thereby committed the tort of conversion;

15

e. Whether DEFENDANT thereby engaged in  ve acts and

practices, in violation of the ICFA;

f. Whether DEFENDANT thereby tortiously damaged the property of

PLAINTIFF.

87. PLAINTIFF will fairly and adequately protect the interests of the class. PLAINTIFF

has retained counsel experienced in handling class actions and claims involving unlawful

business practices. Neither PLAINTIFF nor PLAINTIFF's counsel have any interests which might

cause them not to vigorously pursue this action.

88. A class action is an appropriate method for the fair and efficient adjudication of

this controversy. The interest of class members in individually controlling the prosecution of

separate claims against defendant is small because it is not economically feasible to bring

individual actions.

89. Management of this class action is likely to present significantly fewer difficulties

that those presented in many class actions, e.g., for securities fraud.

e. Whether DEFENDANT thereby engaged in unfair and deceptive acts and practices, in violation of the ICFA;

f. Whether DEFENDANT thereby tortiously damaged the property of PLAINTIFF.

87.     PLAINTIFF will fairly and adequately protect the interests of the class. PLAINTIFF has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither PLAINTIFF nor PLAINTIFF'S counsel have any interests which might cause them not to vigorously pursue this action.

88.     A class action is an appropriate method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against defendant is small because it is not economically feasible to bring individual actions.

89.     Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g., for securities fraud.

16

WHEREFORE, Plaintiff, Premier Design + Build Group, LLC and the class, pray for a judgment, in its favor and against Defendant, Equal Access Health, Inc., for:

a.  Actual damages;

b.  Statutory damages;

c.  An injunction against the further transmission of unsolicited fax advertising;

d.  Costs and Attorney's fees;

e.  Such other or further relief as the Court deems just and proper.

Respectfully submitted,

PREMIER DESIGN +BUILD GROUP, LLC

BY: _____
      One of its attorneys

David C. Hartwell
Penland & Hartwell, LLC
One North LaSalle Street
Suite 1515
Chicago, IL 60602
TEL (312) 578-5610
FAX (312) 578-5640
Atty. No. 41563

17

## ATTENTION: Business Owners & Individuals

# Health Care for the Entire Family



## Medical     Dental     Rx

### Our Healthcare Programs Include:

**As low As**

**$54 95**

Per Month.

- Wide Selection of Doctors & Hospitals
- Vision and Dental Care
- Free Eye Exam
- 50% off Eye Contacts
- Up to 50% off Lasik Eye Surgery
- $25 First Use Rebate™
- $25-$50 Access Rebate™
- $10/$20 "MaxPay" Rx Card
- FREE Dental Exam and FREE X-rays
- Diabetic Supply Savings up to 50%
- $3000 Emergency Room Benefit
- 24hr Live Nurse Help
- VIP Client Services
- 60 Day Satisfaction Guarantee

**ALL Pre-existing conditions accepted!**

**NO limitations on usage!**

**YOU can not be singled out for rate increases or cancellations!**

**NO age restrictions!**

## Limited Time Offer Good Through Friday!

### CALL US TODAY! 1- 800-909-3975

Mon-Fri 8am-8pm, Sat 8am-12pm CST

Our ??? is not a ??? Approx #PL22

If you would like to be removed from future faxes please call 877-619-9925

04/26/2005 11:17 184 '74205    PREMIER DESIG BUILD    PAGE 03
Health Ins Less    -> 10572#74209    1

## ATTENTION: Business Owners & Individuals

# Health Care for the Entire Family

  

### Medical        Dental            Rx

**Our Healthcare Programs Include:**

As Low As

# $54⁹⁵

Per Month.

- Wide Selection of Doctors & Hospitals
- Vision and Dental Care
- Free Eye Exam
- 50% off Eye Contacts
- Up to 50% off Lasik-Eye Surgery
- $25 First Use Rebate™
- $25-$50 Access Rebate™
- $10/$20 "MaxPay" Rx Card
- FREE Dental Exam and FREE X-rays
- Diabetic Supply Savings up to 50%
- $5000 Emergency Room Benefit
- 24hr Live Nurse Help
- VIP Client Services
- 60 Day Satisfaction Guarantee

**ALL Pre-existing conditions accepted!**

**NO limitations on usage!**

**YOU can not be singled out for rate increases or cancellations!**

**NO age restrictions!**

## Limited Time Offer Good Through Friday!

**CALL US TODAY!** # 1-800-909-4012

Mon-Fri 8am-8pm, Sat 8am-12pm CST

© 2005  This is not insurance. Approvals #PL22

If you would like to be removed from future faxes please call: 877-821-4480

04/26/2005  11:17    18    974205          PREMIER DESI    BUILD          PAGE  02
                                           Health Services                PAGE 1

## ATTENTION: Business Owners & Individuals

# Health Care for the Entire Family



### Medical          Dental          Rx

**Our Healthcare Programs Include:**

- Wide Selection of Doctors & Hospitals
- Vision and Dental Care
- Free Eye Exam
- 50% off Eye Contacts
- Up to 50% off Lasik-Eye Surgery
- $25 First Use Rebate™
- $25-$50 Access Rebate™
- $10/$20 "MaxPay" Rx Card
- FREE Dental Exam and FREE X-rays
- Diabetic Supply Savings up to 50%
- $5000 Emergency Room Benefit
- 24hr Live Nurse Help
- VIP Client Services
- 60 Day Satisfaction Guarantee

**As Low As**

# $54.95

**Per Month.**

**ALL Pre-existing conditions accepted!**

**NO limitations on usage!**

**YOU can not be singled out for rate increases or cancellations!**

**NO age restrictions!**

## Limited Time Offer Good Through Friday!

**CALL US TODAY:** # 1-800-909-4012

Mon-Fri 8am-8pm,  Sat 8am-12pm CST

© 2005  This is not insurance. Approval #PL22

If you would like to be removed from future faxes please call: 877-821-4460

## ATTENTION: Business Owners & Individuals

# Health Care for the Entire Family



### Medical    Dental    Rx

## Our Healthcare Programs Include:

- Wide Selection of Doctors & Hospitals
- Vision and Dental Care
- Free Eye Exam
- 50% off Eye Contacts
- Up to 50% off Lasik-Eye Surgery
- $25 First Use Rebate™
- $25-$50 Access Rebate™
- $10/$20 "MaxPay" Rx Card
- FREE Dental Exam and FREE X-rays
- Diabetic Supply Savings up to 50%
- $5000 Emergency Room Benefit
- 24hr Live Nurse Help
- VIP Client Services
- 60 Day Satisfaction Guarantee



As Low As

## $54.95

Per Month.

ALL Pre-existing conditions accepted!

NO limitations on usage!

YOU can not be singled out for rate increases or cancellations!

NO age restrictions!

## Limited Time Offer Good Through Friday!

### CALL US TODAY! 1- 800-909-3975

Mon-Fri 8am-8pm, Sat 8am-12pm CST

*This is not insurance. Approval #PL22

If you would like to be removed from future faxes please call: 877-821-4480

**ATTENTION: Business Owners & Individuals**

# Health Care for the Entire Family



**Medical**



**Dental**



**Rx**

**Our Healthcare Programs Include:**

- Wide Selection of Doctors & Hospitals
- Vision and Dental Care
- Free Eye Exam
- 50% off Eye Contacts
- Up to 50% off Lasik-Eye Surgery
- $25 First Use Rebate™
- $25-$50 Access Rebate™
- $10/$20 "MaxPay" Rx Card
- FREE Dental Exam and FREE X-rays
- Diabetic Supply Savings up to 50%
- $5000 Emergency Room Benefit
- 24hr Live Nurse Help
- VIP Client Services
- 60 Day Satisfaction Guarantee



**As Low As $54.95 Per Month**

**ALL Pre-existing conditions accepted!**

**NO limitations on usage!**

**YOU can not be singled out for rate increases or cancellations!**

**NO age restrictions!**

# Limited Time Offer Good Through Friday!

**CALL US TODAY!**

# 1-800-909-3927

Mon-Fri 8am-8pm, Sat 8am-12pm CST

If you would like to be removed from future faxes please call: 877-821-8102

## ATTENTION: Business Owners & Individuals

# Health Care for the Entire Family

  

## Medical    Dental    Rx

### Our Healthcare Programs Include:



**As Low As $54.95 Per Month.**

- Wide Selection of Doctors & Hospitals
- Vision and Dental Care
- Free Eye Exam
- 50% off Eye Contacts
- Up to 50% off Lasik-Eye Surgery
- $25 First Use Rebate™
- $25-$50 Access Rebate™
- $10/$20 "MaxPay" Rx Card
- FREE Dental Exam and FREE X-rays
- Diabetic Supply Savings up to 50%
- $5000 Emergency Room Benefit
- 24hr Live Nurse Help
- VIP Client Services
- 60 Day Satisfaction Guarantee

**ALL Pre-existing conditions accepted!**

**NO limitations on usage!**

**YOU can not be singled out for rate increases or cancellations!**

**NO age restrictions!**

## Limited Time Offer Good Through Friday!

### CALL US TODAY! 1-800-909-3975

Mon-Fri 8am-8pm, Sat 8am-12pm CST

© 2005 E.A.H. This is not insurance. Approval RFL25

If you would like to be removed from future faxes please call: 877-821-6102

PAGE 1

Health Services

# ATTENTION: Business Owners & Individuals

# Health Care for the Entire Family





## Medical    Dental    Rx

### Our Healthcare Programs Include:



**As Low As**

**$54⁹⁵**

**Per Month.**

- Wide Selection of Doctors & Hospitals
- Vision and Dental Care
- Free Eye Exam
- 50% off Eye Contacts
- Up to 50% off Lasik-Eye Surgery
- $25 First Use Rebate™
- $25-$50 Access Rebate™
- $10/$20 "MaxPay" Rx Card
- FREE Dental Exam and FREE X-rays
- Diabetic Supply Savings up to 50%
- $5000 Emergency Room Benefit
- 24hr Live Nurse Help
- VIP Client Services
- 60 Day Satisfaction Guarantee

**ALL** Pre-existing conditions accepted!

**NO** limitations on usage!

**YOU** can not be singled out for rate increases or cancellations!

**NO** age restrictions!

## Limited Time Offer Good Through Friday!

### CALL US TODAY! 1- 800-909-3975

Mon-Fri 8am-8pm, Sat 8am-12pm CST

© 2005 E.A.H This is not Insurance. Approval #PL29

If you would like to be removed from future faxes please call: 877-821-8102

## ATTENTION: Business Owners & Individuals

# Health Care for the Entire Family



## Medical     Dental     Rx

### Our Healthcare Programs Include:

- Wide Selection of Doctors & Hospitals
- Vision and Dental Care
- Free Eye Exam
- 50% off Eye Contacts
- Up to 60% off Lasik-Eye Surgery
- $25 First Use Rebate™
- $25-$50 Access Rebate™
- $10/$20 "MaxPay" Rx Card
- FREE Dental Exam and FREE X-rays
- Diabetic Supply Savings up to 50%
- $5000 Emergency Room Benefit
- 24hr Live Nurse Help
- VIP Client Services
- 60 Day Satisfaction Guarantee



As Low As
**$54 95**
Per Month

**ALL** Pre-existing conditions accepted!

**NO** limitations on usage!

**YOU** can not be singled out for rate increases or cancellations!

**NO** age restrictions!

# Limited Time Offer Good Through Friday!

### CALL US TODAY! 1- 800-909-3975

Mon-Fri 8am-8pm, Sat 8am-12pm CST

2005 S.A.M. This is not insurance. Approval #FL22

If you would like to be removed from future faxes please call: 877-468-2346

05/13/2005 11:31 1847 4205 PREMIER DESIGN ILD PAGE 02

## ATTENTION: Business Owners & Individuals

# Health Care for the Entire Family



## Medical    Dental    Rx

### Our Healthcare Programs include:

- Wide Selection of Doctors & Hospitals
- Vision and Dental Care
- Free Eye Exam
- 50% off Eye Contacts
- Up to 50% off Lasik Eye Surgery
- $25 First Use Rebate™
- $25-$50 Access Rebate™
- $10/$20 "MedPay" Rx Card
- FREE Dental Exam and FREE X-rays
- Diabetic Supply Savings up to 50%
- $5000 Emergency Room Benefit
- 24hr Live Nurse Help
- VIP Client Services
- 90 Day Satisfaction Guarantee

As Low As

# $54⁹⁵

Per Month

**ALL Pre-existing conditions accepted!**

**NO limitations on usage!**

**YOU can not be singled out for rate increases or cancellations!**

**NO age restrictions!**

## Limited Time Offer Good Through Friday!

### CALL US TODAY! 1-800-909-3975

Mon-Fri 8am-8pm, Sat 8am-12pm CST

To be removed from our fax list, please call 877-771-5077



## CERTIFICATE OF SERVICE

The undersigned certifies that on the 31st day of October 2005, I filed the foregoing with the Clerk of the Court and copies of the foregoing Notice of Filing of Notice of Removal was duly served by U.S. Mail, postage prepaid, addressed to:

David C. Hartwell
Penland & Hartwell, LLC
One North LaSalle Street, Suite 1515
Chicago, IL 60602
(312)578-5610 – Fax

*Attorney for Premier Design ⊢ Build, LLC*

3